THE PEOPLE ex rel. John J. Brownrigg, Petitioner, vs. THEODORE BRENTANO, Respondent.

Opinion filed June 18, 1913—Rehearing denied October 15, 1913.

1. MANDAMUS—the writ of mandamus will not be awarded in a doubtful case. The writ of mandamus will be awarded only when the right of the petitioner is clear and undeniable and the party sought to be coerced is bound to act.

2. SAME—when Supreme Court will not compel judge to proceed with hearing of cause. Where during a general continuance of a chancery cause after a partial hearing by a judge of the superior court of Cook county such judge is assigned, under the statute, to the common law side of the court and the cause is placed upon the calendar of another judge assigned to call the chancery docket, the Supreme Court will not award mandamus to compel the judge who began the hearing to conclude the same, where no reason appears why the cause cannot be disposed of expeditiously and fairly to all parties by the other judge.

ORIGINAL petition for mandamus.

CHYTRAUS, HEALY & FROST, and CARL V. WISNER, for petitioner.

JACOB NEWMAN, and HIRAM T. GILBERT, for respondent.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

This is an original proceeding for mandamus, brought by the relator, John J. Brownrigg, against Theodore Brentano, one of the judges of the superior court of Cook

county, for the purpose of compelling the respondent to proceed with the hearing of a certain cause pending in the superior court of Cook county. The matter has been presented to us for determination upon the pleadings, which consist of the petition for *mandamus,* the answer thereto and a demurrer to the answer. From the answer, and from the allegations of the petition which are either admitted or are not controverted by the answer, the following facts are disclosed:

On December 11, 1911, one Casper L. Redfield filed his bill of complaint in the superior court of Cook county against Brownrigg and certain other defendants, including James D. Lynch, J. E. Norling, F. A. Lundquist and A. L. Craig, to enforce specific performance of a contract for the transfer to Redfield of certain shares of the capital stock of the Lorimer-Lundquist Company, a corporation, and for other incidental relief. By that bill it was alleged that those who owned and controlled the capital stock of the Globe Automatic Telephone Company, a corporation, (hereinafter referred to as the Globe Company,) acting and dealing with those who owned and controlled the capital stock of the Lorimer Automatic Telephone Company, a corporation, after making the contract sought to be enforced, and for the purpose of carrying out the same, re-organized the Lorimer Automatic Telephone Company, decreased its capital stock and changed its corporate name to the Lorimer-Lundquist Company; that as a part of the plan of such re-organization one-half of the capital stock of the Lorimer-Lundquist Company was issued to the interests of the Globe Company and the other one-half to the interests which previously were of the Lorimer Automatic Telephone Company; that the assets of the Globe Company consisted almost wholly of certain patents and patent rights which became exceedingly valuable about the time of said re-organization, but that for a long time prior thereto the Globe Company had been inactive, had held no meetings

and had transacted no business because of a total lack of
funds, and that on account of such quiescent condition the
defendants Lynch, Norling, Craig and Lundquist, who were
officers of the company, were enabled to, and did, when the
patents and patent rights became valuable, in violation of
their contractual obligations and of their duties as officers
to the stockholders of the company, by means of said re-
organization and in connection therewith, wrongfully and
fraudulently convert and appropriate the assets of the Globe
Company, including one-half of the capital stock of the re-
organized company, to their own use, in disregard of the
rights of Redfield; that in said re-organization, Lynch, Nor-
ling, Craig and Lundquist, or some of them, acted for and
on behalf of the Globe Company and its stockholders, and
bargained for and obtained one-half of the capital stock of
the Lorimer-Lundquist Company in exchange for the pat-
ents and patent rights owned by the Globe Company, and
caused the certificates of stock to be issued in the name
of Lynch, individually or as trustee, and now claim that he
holds the same for them alone; that after the re-organization
above mentioned, all the assets of the Lorimer-Lundquist
Company were sold to the Western Electric Company for
$650,000 and a dividend of thirty per cent was declared by
the Lorimer-Lundquist Company, which would distribute
substantially all the cash received from said sale, the balance
of the purchase money being payable in one and two years.
The prayer of the bill was that the court determine the pre-
cise interest of Redfield in the capital stock of the Lorimer-
Lundquist Company; that Lynch be restrained from receiv-
ing, and the company from paying to him, any dividend or
distributive share thereon, and that Lynch be required to
transfer, assign and deliver to Redfield such stock in the
Lorimer-Lundquist Company held by Lynch as equitably be-
longs to Redfield, and for other incidental relief.

On January 29, 1912, Brownrigg answered the bill filed
by Redfield, and also filed a cross-bill against the complain-

ant in the original bill and the remaining defendants, alleging that he and F. A. Lundquist and John K. Norstrom were the inventors of the patents and patent rights that were owned by the Globe Company and exchanged for the capital stock of the Lorimer-Lundquist Company; that during the year 1900 they entered into a partnership with John E. Norling and Peter Norling under an agreement that the Norlings should furnish the capital necessary to develop and manufacture the inventions covered by the patents and patent rights, and in consideration thereof should receive an assignment of a one-half interest in the said patents and patent rights, the inventors to retain the other one-half interest for themselves; that by a course of inequitable and unconscionable schemes since the year 1900, John E. Norling, Lynch, Craig and Lundquist had succeeded, without compensation or consideration, in appropriating to themselves and in converting to their own use, from time to time, portions of the interest in said patents and patent rights and inventions equitably belonging to Brownrigg, and had thereby, from time to time, reduced his proportion or interest, so that at the time of filing the cross-bill Brownrigg had but 141 shares of a total of 5000 shares of the capital stock of the Globe Company, and that a large portion of the stock of the company had been issued without payment therefor. The prayer of the cross-bill was, that the rights of Brownrigg and other stockholders of the Globe Company who had not been recognized as stockholders of the Lorimer-Lundquist Company be ascertained; that the consolidation of the Globe Company with the Lorimer Automatic Telephone Company and the transfer of the patents and patent rights to the Lorimer-Lundquist Company be declared void and be set aside; that the sale to the Western Electric Company be declared void and set aside, or, in the alternative, that the interest of Brownrigg in the capital stock of the Lorimer-Lundquist Company be ascertained and transferred to him, and for incidental relief.

On February 5, 1912, the Lorimer-Lundquist Company answered the original bill and filed a cross-bill, praying that the various claimants be compelled to interplead how the funds in possession of said company should be distributed and asking permission to pay such funds into court, and that all claims against it be transferred to such funds when paid into court.

On March 7, 1912, Lundquist, Norling, Craig, Lynch and the Globe Company answered the original bill and the cross-bill filed by Brownrigg, denying material allegations of those bills and alleging other facts for the purpose of showing that there was no equity in the bill or cross-bill.

On March 6, 1912, Lynch brought an action in the municipal court of Chicago against the Lorimer-Lundquist Company to recover the dividend of $30 per share on the shares of stock held by him, which had been declared by the company, as stated in the original bill. Thereupon Redfield filed his petition in the superior court in the cause above mentioned, praying for an order restraining the prosecution of the suit in the municipal court until the further order of the superior court. Lynch answered this petition, and on May 28, 1912, the superior court entered an order restraining the prosecution of the suit in the municipal court. Lynch appealed from that order to the Appellate Court for the First District, and the Appellate Court reversed the order of the superior court and remanded the cause for further proceedings. In the meantime, on March 5, 1912, Brownrigg executed and delivered to one Walter H. Lee an instrument which purported, for a consideration of $1500, to assign and transfer to Lee all the right, title and interest of Brownrigg in and to the 141 shares of stock of the Globe Company, and any and all other interest, claim or demand of Brownrigg in said company or to any property of said company, and also all claims, causes of action and matters in controversy that he had asserted in and by the cross-bill filed by him as aforesaid, and authorized Lee

and his assigns to settle and dispose of the claims asserted
by him to any stocks, bonds or other property mentioned in
the original bill or in the cross-bill above mentioned.   On
March 22, 1912, Lee filed in said cause a petition, setting
out the contents of the assignment from Brownrigg and
praying for the substitution of Lee as a party to the cause
in the place of Brownrigg and for the dismissal of Brown-
rigg's cross-bill therein.   Brownrigg answered this petition,
denying the validity of the assignment to Lee on the ground
that it had been obtained by false representations and for a
grossly inadequate consideration, and alleging that he had
tendered back the $1500 received from Lee and had re-
pudiated and rescinded the assignment, and praying that the
assignment be adjudged null and void and that Lee be re-
quired to surrender the same.   Shortly after this answer
was filed the cause was set for hearing before Judge Bren-
tano upon the petition filed by Lee and the answer of
Brownrigg thereto.   The hearing was begun on April 8,
1912, when Lee presented the evidence on his behalf and
rested his case, and thereafter, on the same day, Brown-
rigg opened his case and introduced evidence on his behalf.
On six subsequent days, up to and including April 19, 1912,
Brownrigg offered evidence on his behalf before Judge
Brentano and had not then concluded his case.   On the date
last mentioned one of Lee's solicitors informed the court
that as he was a member of the legislature of this State,
and as the legislature met in special session on April 24,
1912, he would ask that further hearing be postponed until
some later date to be fixed in the future, and thereupon the
hearing was continued generally.   Thereafter, on July 5,
1912, Lynch filed in said cause in the superior court his
cross-bill against Brownrigg, Lee and others, alleging that
on June 14, 1912, Lee, for a valuable consideration, as-
signed to Lynch all his right, title and interest in and to
the 141 shares of capital stock of the Globe Company and
all other rights and interests which Lee had acquired by vir-

tue of the assignment from Brownrigg, and praying that the cross-bill filed by Brownrigg be dismissed, and that he (Lynch) be adjudged the owner of the 141 shares of stock and of all other rights assigned and transferred by Brownrigg to Lee by the said assignment. On August 19, 1912, Brownrigg filed a plea to the cross-bill of Lynch, setting up the filing of the petition by Lee and of Brownrigg's answer thereto, and the pendency of the hearing thereon, as a bar to the prosecution of the cross-bill by Lynch, and asking that the cross-bill be dismissed.

In July, 1912, in accordance with the practice in the superior court of Cook county, Judge Brentano was assigned, for a period of one year, to duty on the common law side of the superior court and was relieved of duty on the chancery side of the court, and all chancery cases which had theretofore been assigned to him and which had not been finally disposed of, including the cause begun by Redfield, were re-assigned to and placed upon the calendars of other judges of the superior court who had been selected to call the chancery docket of the court for the ensuing year, and as a result of such re-assignment the cause in which the proceedings above set out had been had was assigned to and placed upon the calendar of William E. Dever, one of the judges of the superior court, who had been selected as one of the judges to hear chancery causes during the ensuing year. No further proceedings in said cause were had or sought before Judge Brentano after the indefinite postponement on April 19, 1912, until the latter part of December, 1912, excepting that shortly after the filing of the cross-bill by Lynch, and before the filing by Brownrigg of his plea thereto, the latter, through his solicitors, entered his motion to strike from the files the cross-bill, which motion was heard and denied by Judge Brentano.

The petition for *mandamus* alleges that during the latter part of December, 1912, the solicitors for Lee and Brownrigg appeared before Judge Brentano, and that one of Lee's

solicitors then stated to Judge Brentano that his clients felt they would not have a fair hearing before him and desired that he should not further continue the hearing then pending, and at the same time suggested that Brownrigg might cause the evidence already taken to be transcribed and that the same might be made into a certificate of evidence and produced before another chancellor by Brownrigg, if he so desired, and that Lee's solicitors also called to the attention of Judge Brentano the fact that since the last hearing the cause, through the shifting of judges to sit as chancellors in the superior court, had been placed upon the calendar of a judge of the superior court other than Judge Brentano. The petition further alleges that Brownrigg, by his solicitors, insisted that Judge Brentano continue and conclude the pending hearing upon Lee's petition, and objected to the pending hearing being transferred to another judge on the ground that it would cause an additional expense and loss of time and because the same situation and conditions in the introduction of evidence could never again be reproduced, but that Judge Brentano refused, and has ever since refused, to continue and conclude the taking of evidence and hearing and to decide and determine the issues joined in the matter of the said petition of Lee. The prayer of the petition for *mandamus* is, that Judge Brentano be required to show cause why a writ should not be issued against him commanding him to proceed forthwith to continue the hearing and to determine the issues upon the petition filed by Lee in said cause and the answer of the relator thereto.

The answer of the respondent alleges that during the latter part of December, 1912, the solicitors for Lynch and Lee and the solicitors for Redfield and Brownrigg appeared in the superior court before Judge Dever, and that thereupon the solicitors for Lynch and Lee sought to take further proceedings in the cause with a view to settling the issues therein preparatory to the final hearing thereof; that

thereupon the solicitors for Redfield and Brownrigg suggested to Judge Dever that Judge Brentano, having heard a portion of the evidence relating to the issues presented under the petition filed by Lee, ought to proceed with the hearing and determination of the entire cause, or at least with the hearing and determination of the issues arising under the petition filed by Lee, and that Judge Dever thereupon referred to Judge Brentano for determination whether said cause, and all matters connected therewith, should be heard and finally determined by Judge Dever or by Judge Brentano; that shortly afterwards the solicitors for the respective parties appeared in the chambers of Judge Brentano, where the matter was discussed, and that respondent, Judge Brentano, decided that the cause, and all matters connected therewith, should be ·heard and determined by Judge Dever and that proceedings in said cause could not be had or taken before respondent; that while it is true that on this occasion the solicitors for Lynch and Lee informed respondent that their clients felt they would not have a fair hearing before respondent and that they desired that respondent should not further continue the hearing then pending, and that respondent stated, in substance, that under the circumstances, in view of the fact that some of the parties did not desire him to continue the hearing, it was not agreeable for him to do so, and while it is true that respondent took into consideration the statement made by the solicitors for Lynch and Lee in refusing to continue with the hearing, yet respondent was satisfied that none of the parties could be prejudiced by respondent's refusal to continue with such hearing, and was of the opinion that the hearing and determination of the issues could be had before Judge Dever with as much justice and fairness to all the parties, and with as much expedition, as before respondent; that from the evidence which had been introduced before him respondent was satisfied that the entire suit could

be disposed of more expeditiously and with less expense and more justice to all the parties thereto if there should be but one final hearing of the cause, which should embrace not only the issues arising under the petition filed by Lee, but also the issues arising under all the pleadings in the cause; that on account of the lapse of time since the hearing before respondent it would probably be necessary, if the hearing were to proceed before him, to have the testimony transcribed, in order that he might read the same and refresh his recollection with respect thereto. The answer further alleges that since the third Monday of September, 1912, respondent has been engaged, in pursuance of his assignment to duty on the common law side of the superior court, in presiding over the trial of jury cases and is still so engaged, and will continue to be so engaged until the commencement of the summer vacation, in the latter part of July of the present year, excepting that he has for a short period been assigned to duty, and may hereafter be for short periods assigned to duty, in the criminal court of Cook county, and that if respondent were compelled to proceed with and conclude the hearing of said cause, or any portion thereof, it would seriously interfere with the disposition of the jury trials now upon respondent's calendar and would operate to delay the litigants whose cases are for trial upon such calendar; that respondent is informed and believes that Judge Dever is ready and willing to proceed with the hearing and determination of said cause as soon as the issues have been made, and that Brownrigg and all the other parties to the cause can obtain a final determination of the controversies arising in said cause with all convenient speed.

There can be no question of the right of this court, in a proper case, to issue a writ of *mandamus* to compel the judge of an inferior court to hear a cause pending in that court. The writ of *mandamus*, however, is awarded in the

·discretion of the court, and will only issue where the party applying for it shows a clear legal right to have the thing sought by it done. The writ will not be awarded in a doubtful case, but will issue only where the right of the relator is clear and undeniable and the party sought to be coerced is bound to act. *People* v. *Hatch,* 33 Ill. 9; *People* v. *Kohlsaat,* 168 id. 37; *People* v. *Rose,* 225 id. 496; *People* v. *Busse,* 248 id. 11.

The superior court of Cook county at the present time is composed of eighteen judges. In a court of this size, where a large volume of business is transacted, it becomes necessary that some system be adopted for a division of the work among the various members of the court whereby the business may be transacted expeditiously and without friction. Recognizing this necessity, our statute provides, under such circumstances, for the designation of certain judges to call the chancery docket of the court. This provision is found in section 23 of the Practice act, which is as follows: "In any court wherein five or more judges of the same court shall be holding separate branches thereof at the same time, for the trial of causes, such judges shall designate not less than two of their number to call the chancery docket of the court. Such designation shall be made in the month of June in each year and shall be for the period of one year. In default of action by the judges, during the month of June, or in case any judge so designated shall decline to serve or shall die or resign, the presiding judge or chief justice of the court shall make such designation, and may designate himself as one of such judges." When a new designation of judges to call the chancery docket has been made under this section of the statute, it must necessarily be the fact that some causes are left pending on the dockets of the old chancellors in various stages of completion. Doubtless in many instances causes have reached that stage in their consideration by the chancellor to whom they have

259 — 24

been assigned, that it becomes necessary for him to proceed to a final determination of them despite the fact that he may have been assigned to duty in the criminal court or on the common law side of the superior court. Some of the causes pending, however, must, of necessity, be transferred to the dockets of the newly assigned chancellors.

The question to be determined here is, whether the hearing on the Lee petition had reached such a stage that justice required that the matters therein involved should be finally determined by Judge Brentano. The hearing on the Lee petition was a preliminary matter to the hearing on the main case. When this controversy arose the pleadings in the main case had not been settled, and the answer of the respondent discloses that service had not been had upon all the parties. After the indefinite continuance of April 19 Brownrigg made no further attempt to have the hearings resumed or to speed the cause until the latter part of the following December. The special session of the legislature which was convened on April 24 adjourned *sine die* on the fifth day of June following. Although Brownrigg and his attorneys were bound to know that there was a possibility that Judge Brentano might not be designated during the month of June to call the chancery docket for the succeeding year, no effort was made to complete the hearing before Judge Brentano after the adjournment of the special session of the legislature and during the remainder of the period for which he had been designated as a chancellor. Such a period of time has elapsed since the testimony was taken that Judge Brentano in his answer very naturally alleges that should he complete the hearing on this petition it will probably be necessary for him to require the testimony to be transcribed, in order to refresh his recollection and to enable him to arrive at a determination of the questions of fact involved. The petitioner, Lee, has expressed his willingness to have the testimony already taken transcribed and

submitted to Judge Dever, to be considered by him in determining the issues raised upon the Lee petition and the answer thereto. This will afford the chancellor the same opportunity to arrive at a conclusion as if the petition and answer had been referred to a master in chancery to take the testimony in the first instance, as might have been done.

While it is true that Judge Brentano in his answer admits that he considered the suggestion that Lee did not believe he could secure a fair trial before him and preferred to have the matter transferred to another chancellor, yet it conclusively appears from his answer that he based his refusal to continue the hearing on the petition upon the ground that another member of the court had been designated as a chancellor to call the chancery docket in his stead and he was now assigned to duty on the common law side of the court in presiding over the trial of jury cases.

We are unable to perceive wherein Brownrigg will be unduly prejudiced by having the hearing on the Lee petition concluded before Judge Dever or some other member of the court who has been designated to call the chancery docket. If every party who has a chancery cause pending in the superior court of Cook county in which some steps have been taken should be permitted to compel the judge before whom the matter was pending to continue the cause on his docket until it was finally determined, the business of the whole court would be confused and disarranged, the rights of litigants in other causes necessarily disregarded and said section 23 of the Practice act above set out rendered practically nugatory.

The answer of respondent is sufficient. The demurrer is overruled and the writ of *mandamus* denied.

*Writ denied.*