RUTHIE L. BALCIUNAS, Plaintiff, v. BRIAN B. DUFF, Judge, *et al.*, Defendants.

*Opinion filed February 18, 1983.*

SIMON, J., concurring.

O'Brien, Carey, Scheuneman & O'Rourke, Ltd., of Chicago (John J. O'Toole, Tom Scheuneman, Peter Petrakis, and Milton M. Blumenthal & Associates, of counsel), for plaintiff.

Jane Clark Casey, Deputy State's Attorney, of Chicago, for defendant Brian B. Duff.

Hugh C. Griffin, William J. White, and R. R. McMahan, of Chicago (Lord, Bissell & Brook, of Chicago, and Otis M. Smith, of Detroit, Michigan, of counsel), for defendant General Motors Corporation.

JUSTICE UNDERWOOD delivered the opinion of the court:

This is an original action, in which we allowed Ruthie L. Balciunas (plaintiff) leave to file a complaint for the issuance of a writ of *mandamus* (87 Ill. 2d R. 381). That complaint seeks to compel Brian B. Duff, a judge of the circuit court of Cook County, to expunge certain pretrial discovery orders entered in the case of Balciunas v. General Motors Corporation (GMC) *et al*. Plaintiff also seeks to have the matter reassigned to Walter B. Bieschke, also a judge of the circuit court of Cook County, for further hearings.

In the underlying litigation, plaintiff brought an action to recover damages for severe injuries that she sustained in 1978, while she was driving a 1971 Pontiac Firebird involved in a side-impact collision. During the course of discovery, plaintiff filed a notice to produce certain documents, photographs and motion pictures.

GMC filed objections thereto, and a hearing was held in February 1981 before Judge Bieschke, one of the two judges then presiding in the motion section, law division, of the circuit court of Cook County. Following the hearing, at which there was apparently some discussion concerning a protective order, Judge Bieschke entered an order which, in relevant part, provided:

"7. Paragraph 7 of Plaintiff's Notice to Produce is hereby modified to read as follows, and defendant, GENERAL MOTORS shall produce: the complete crash test report (also known as the engineering report) including all photographs and motion pictures for all side impact crash tests from 1960 through April 2, 1978, inclusive for all GENERAL MOTORS CORPORATION Divisions, domestic and foreign, for all passenger automobiles only, including the:

a) Chevrolet, all models;
b) Pontiac, all models;
c) Buick, all models;
d) Cadillac, all models;
e) Oldsmobile, all models;
f) Opel of Germany, all models;
g) Vauxhall of England, all models;

for all versions, including:

a) Prototypes;
b) Developmental version;
c) Experimental version;
d) Production version;
e) Modified version;
f) Special - component version.

\* \* \*

11. Paragraph 11 of Plaintiff's Notice to Produce is hereby modified to read as follows, and defendant, GENERAL MOTORS, shall produce: any and all materials submitted by GENERAL MOTORS to the National Highway Traffic Safety Administration (NHTSA) and its predecessor National Highway Safety Bureau (NHSB) concerning Federal Motor Vehicle Safety Standard No. 214 (side door strength passenger cars) and all docket submissions relevant thereto, which are not a part of the record

available to the public for inspection.

\* \* \*

15. Defendant, GENERAL MOTORS' request for a 'protective order' is hereby denied, without prejudice to GENERAL MOTORS resubmitting its request for a protective order and showing that it is legally entitled thereto."

In May 1981, GMC filed a written motion for a protective order with accompanying affidavits of two employees, a staff analysis engineer and an engineering manager. GMC asserted that the materials requested in paragraphs 7 and 11 of petitioner's notice to produce contained trade secrets and proprietary information and sought to limit the persons to whom plaintiff could disclose those materials. GMC also requested that the original crash-test films be viewed at GMC's offices in Milford, Michigan. Pursuant to that motion, the parties appeared before Judge Bieschke on July 1, 1981, at which time the court heard arguments concerning the merits of the motion for a protective order, its proposed scope and the manner in which production should proceed. At the conclusion of the hearing, Judge Bieschke directed both parties to submit proposed protective orders embodying the suggestions and recommendations of the court concerning its scope.

Three further hearings were held before Judge Bieschke on August 11, September 18 and October 13. At the October 13 hearing, the court ruled that, while it was initially inclined to grant some protection against unlimited disclosure of the materials, after reviewing the proposed drafts submitted and the applicable law, GMC had not met its burden of proving that it was entitled to trade-secret protection. The court indicated that the motion would be denied without prejudice to GMC to demonstrate at a later time that it was entitled to a protective order.

Throughout the various hearings, the parties argued extensively about the breadth of the production request relating to the crash tests and the manner in which the dis-

puted materials would be made available to plaintiff. There were between 500 and 600 side-impact crash tests performed by GMC over the period in question, consisting of approximately 15,000 documents, including diagrams and photographs, and over 500 films. The major dispute concerned production of the films. GMC represented that the original films could not be produced at plaintiff's counsel's office in Chicago for viewing on projection equipment, rather than GMC's special equipment located at its offices, without considerable risk of loss or damage. In addition, GMC asserted that removal of the original films from Michigan would seriously disrupt and interfere with ongoing research, development and other activities, and that the cost of reproducing the films would be in excess of $50,000. Plaintiff's expert witness had indicated that most of the reports would not be relevant to his opinion; however, he believed it necessary to see all of them before he could identify those that were relevant. GMC had suggested, at various times, that it would minimize the burden and expense of reproducing all of the materials, without prejudicing plaintiff, if plaintiff's expert would initially review an index list to determine which test materials would be relevant. Judge Bieschke eventually entered an order requiring GMC to produce, at the office of plaintiff's counsel in Chicago, all of the original reports and films requested or, at its option, to provide complete authenticated reproductions, at its expense. All copies of the films were to remain the property of GMC, with plaintiff reserving the right to designate which films she would want to purchase, at her expense.

On December 1, 1981, GMC filed a petition for reconsideration of the court's rulings. To supplement its original showing, GMC attached a rather lengthy affidavit of another staff analysis engineer which purported to explain in detail the nature of the requested information and the necessity for a protective order. GMC also sought a modifica-

tion of the court's rulings on production of the materials requested in paragraph 7 of plaintiff's notice to produce, in view of the cost of reproduction of these materials which allegedly would have no relevancy to the pending action nor lead to the discovery of relevant information. It was also asserted that the request included approximately 221 fuel-system-integrity crash tests in which no passenger-compartment-intrusion observations were made or recorded, and which were thus of no relevance whatever to the litigation. GMC's motion for reconsideration was allowed by Judge Bieschke, and a hearing was scheduled before him for March 1, 1982.

On January 4, 1982, under the regular Cook County assignment system, Judge Duff succeeded Judge Bieschke as one of the two motion judges; Judge Bieschke was transferred to the trial section. The rules of the Cook County circuit court contemplate that, in these circumstances, the motion to reconsider would normally be heard by the successor motion judge. (See General Order No. 13, Circuit Court of Cook County.) Plaintiff, however, thereafter filed a motion to transfer GMC's petition for reconsideration to the presiding judge for reassignment to Judge Bieschke. After conferring with Judge Bieschke, who indicated that Judge Duff should hear the matter, Judge Duff denied plaintiff's motion, and the hearing was held on March 1.

At the conclusion of the March 1 hearing, Judge Duff entered an order requiring GMC to produce, at plaintiff's attorney's office, copies of those side-impact-test reports relating to passenger-compartment intrusion, copies of representative samples of those reports relating to fuel-system integrity, and copies of the materials submitted to the National Highway Traffic Safety Administration. It was further ordered that the original films relating to passenger-compartment intrusion be made available to plaintiff's attorney and expert at GMC's offices in Michigan. Following such review, plaintiff could request copies of the films,

the first 50 to be made at GMC's expense. Judge Duff determined that the decision on the merits of the motion for a protective order should be reserved until the parties had completed production and a determination was made by plaintiff's counsel as to which materials would be relevant to the litigation. In order to preserve the confidentiality of the materials until production was completed and a decision was rendered, the court issued a temporary protective order restricting and limiting disclosure in the manner requested by GMC.

There is no jurisdictional challenge to Judge Duff's actions. Nor is it argued that Judge Duff, as one of the assigned motion judges, lacked the authority to consider GMC's petition for reconsideration. Rather, plaintiff argues that Judge Duff reviewed and reversed orders entered by another judge of coordinate authority, and that such action is neither consistent with the orderly administration of justice nor with our judicial system. Among the cases cited by plaintiff for the above proposition, none are apposite. Primary reliance is placed upon three opinions in which this court issued either a writ of *mandamus* or a supervisory order: *People ex rel. MacMillian v. Napoli* (1966), 35 Ill. 2d 80; *People ex rel. Kelly, Ketting, Furth, Inc. v. Epstein* (1974), 61 Ill. 2d 229; *People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394.

In *Napoli*, the petitioner sought a writ of *mandamus* to compel Judge Napoli of the circuit court of Cook County, the judge before whom petitioner's case was pending, to treat as binding on him an order of another judge who had granted petitioner's pretrial motion to suppress evidence. This court, in issuing the writ, pointed out that the plain language of the statute provided that evidence which had been suppressed pursuant to such a motion was inadmissible in evidence at any trial, and the State's remedy, if it deemed that ruling erroneous, was to appeal as provided by statute.

In *Epstein*, the petitioner, a plaintiff in a pending action, had obtained orders restraining the payment or transfer of certain funds; a motion for a temporary injunction was scheduled to be heard before the same judge shortly thereafter. The defendants in the underlying action presented an emergency motion to another judge of that court seeking to vacate the order entered and enjoin plaintiff from proceeding with the motions for injunctive relief. That motion was allowed on the ground that the original judge had erroneously exercised chancery jurisdiction and entered "defective" orders. As in *Napoli*, this court commented that it was entirely clear that defendants' remedy, if they believed themselves aggrieved by the original orders, was to appeal, and the second judge should have declined to act. It was in that judge-shopping context that this court disapproved of one judge reviewing orders entered by another judge of the same court in the same case. See also *People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249; *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District* (1973), 54 Ill. 2d 442.

Finally, in *Covelli*, a search warrant has been issued by a judge of the circuit court of Cook County authorizing, for investigative purposes, the search and seizure of certain materials located in the home of an individual who had been shot to death. The deceased's daughters thereafter filed a "Complaint in Chancery," and pursuant thereto another judge of the same court ultimately issued an order directing that the property be returned to the plaintiffs. This court held that the remedy of the daughters under the statute governing the return of items seized pursuant to a search warrant was adequate to protect their rights, and it was therefore error for the second judge to interfere with the statutory remedy.

None of the cases cited above involved interlocutory discovery rulings entered by a motion judge who, in the ordi-

nary course of judicial reassignment, succeeded a previously assigned judge. There is in this case nothing resembling the action of the disappointed litigants in the cited cases who sought out judges more sympathetic to their claims. There is no similar question here concerning the propriety of GMC's actions in filing a petition for reconsideration of the previous rulings. That action was invited by Judge Bieschke, at least insofar as the protective order was concerned, and, indeed, he had allowed the petition for reconsideration and set the March 1 hearing prior to the reassignments. Thus, there is no "judge shopping" involved here, nor is it contended otherwise. While we agree that repeated reevaluations of prior discovery orders are undesirable, we do not believe GMC's action here in seeking a reconsideration of one discovery ruling on production of materials, when there were apparently several production orders which were not disputed, evidences any bad faith or abusive tactics. Further, unlike most of the cases plaintiff relies upon, GMC pursued a proper remedy in petitioning for reconsideration of those prior interlocutory rulings which were not appealable.

In a variety of contexts, this court has stated that an interlocutory order may be reviewed, modified or vacated at any time before final judgment, and it is of no consequence that the original order was entered by another circuit judge. (*E.g., Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 121; *Leopold v. Levin* (1970), 45 Ill. 2d 434, 446; *Roach v. Village of Winnetka* (1937), 366 Ill. 578, 581; *Shaw v. Dorris* (1919), 290 Ill. 196, 204; *Fort Dearborn Lodge No. 214 v. Klein* (1885), 115 Ill. 177, 181; *cf. Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 231.) While those cases did not involve pretrial discovery rulings, we think that this court's decision in *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, is virtually dispositive.

In that case, one of the defendants had moved for judgment, claiming that a previous judgment dismissing plain-

tiff's suit against Yellow Cab Company was *res judicata.* That motion was denied by the motion judge, and the action was assigned to another judge for a pretrial conference. Defendant renewed his motion before the second judge, who, agreeing with defendant's contention, dismissed plaintiff's action against that defendant. On appeal, this court considered the propriety of the second judge's action. First, the court noted that the original order denying the motion was in the nature of an interlocutory order, and that the circuit court has inherent power to amend and revise such an order prior to final judgment. The court further stated:

> "In the instant case, the trial court had jurisdiction over the entire controversy, and would retain jurisdiction until final judgment. While prior rulings should be vacated or amended only after careful consideration, especially if there is evidence of 'judge shopping' on behalf of one who has obtained an adverse ruling, a court is not bound by an order of a previous judge (*Richichi v. City of Chicago* (1964), 49 Ill. App. 2d 320) and has the power to correct orders which it considers to be erroneous. Here, the cause was assigned to the second judge as a matter of procedure. The defendant could properly renew his motion, even though it had been denied by another judge, and the pretrial judge, in turn, could review and modify the first judge's interlocutory order." (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 121.)

It is thus apparent that Judge Bieschke's orders were not binding upon Judge Duff, and that he was not completely precluded from their reconsideration.

Plaintiff suggests, however, that in the limited circumstances presented here, it would have been neither impractical nor inappropriate for Judge Bieschke to rule on the motion for reconsideration, and that this court should issue *mandamus* to compel Judge Duff to expunge his orders and to require reassignment of the petition to Judge Bieschke. It is submitted that a ruling by this court requiring that a motion for reconsideration of discovery orders be

heard by the judge who entered those orders need not disturb the rotational-assignment system of the circuit court and would affect only an infinitesimal number of cases. GMC, on the other hand, predicts that such a requirement would have disastrous consequences on the efficient administration of justice, given the volume of cases, pretrial movements, and number of judges in the circuit court of Cook County. It seems to us, however, that the problems would not be confined to Cook County but would be at least equally troublesome for the bench and bar in the widely separated downstate counties. It seems clear that it is far preferable to place some limitations on the circumstances under which a successor judge should review or modify previous discovery orders than to impose a requirement such as that suggested by plaintiff, which, we believe, would be totally inconsistent with the orderly and efficient administration of justice in this State. See *People ex rel. Brownrigg v. Brentano* (1913), 259 Ill. 359.

As we have noted, in previous cases this court has indicated that prior interlocutory rulings should be modified or vacated by a successor judge only after careful consideration. (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 121; *Leopold v. Levin* (1970), 45 Ill. 2d 434, 446.) In the context of discovery, where abuse is said to be widespread and delay phenomenal (*Herbert v. Lando* (1979), 441 U.S. 153, 176-77, 179, 202, 204-05, 60 L. Ed. 2d 115, 134, 135-36, 150, 151-52, 99 S. Ct. 1635, 1649, 1650, 1662, 1663 (majority opinion) (Powell, J., concurring) (Stewart, J., dissenting) (Marshall, J., dissenting); see also *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67-68; Burger, *Agenda for 2000 A.D.—A Need for Systematic Anticipation*, 70 F.R.D. 83, 95-96 (1976); Renfrew, *Discovery Sanctions: A Judicial Perspective*, 67 Calif. L. Rev. 264 (1979); Comment, *Excessive Discovery in Federal and Illinois Courts: A Tool of Harassment and Delay?*, 11 Loy. Chi. L.J. 807 (1980)), we think it is particularly appropriate for a judge before whom

a motion for reconsideration is pending to exercise considerable restraint in reversing or modifying previous rulings. This is especially true if there is evidence of "judge shopping" or it is apparent that a party is seeking, for delay or abusive purposes, a reconsideration of prior rulings.

" '[T]he objective to be obtained under the discovery rules is the expeditious and final determination of controversies in accordance with the substantive rights of the parties' " (*Sarver v. Barrett Ace Hardware, Inc.* (1976), 63 Ill. 2d 454, 460, quoting *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 357), and the discovery procedures themselves were designed to be flexible and confer broad discretionary powers on the trial court (63 Ill. 2d 454, 460). However, "such a breadth of power requires a careful exercise of discretion in order to balance the needs of truth and excessive burden to the litigants." (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 193.) Accordingly, once the court has exercised its discretion, that ruling should not be reversed by another member of the court simply because there is disagreement on the manner in which that discretion was exercised. Rather, a successor judge, before whom the case has been assigned, should revise or modify previous discovery rulings only if there is a change of circumstances or additional facts which warrant such action. Such a rule minimizes the potential for "judge shopping" and preserves the orderly and efficient functioning of the judicial system. We note, too, that our holding is in accord with the general rule in the Federal courts, which recognizes the power of a Federal district judge to revise or modify a ruling by another judge in the same case, but requires a compelling reason for such action. See Annot., 20 A.L.R. Fed. 13 (1974), and cases cited therein.

The writ of *mandamus* is an extraordinary remedy which should not, under normal circumstances, be used to regulate discovery in the trial court (*Marshall v. Elward* (1980), 78 Ill. 2d 366, 375; *People ex rel. General Motors*

*Corp. v. Bua* (1967), 37 Ill. 2d 180, 190-92), and we accordingly decline to issue it in this case. In view of the discussion and standard embodied herein, however, we believe it desirable to afford Judge Duff or his successor in the motion-judge assignment an opportunity to reconsider this matter in light of this opinion. We therefore exercise our supervisory power and direct that he vacate the March 12 order and proceed accordingly. While we express no opinion on the merits of the motion for a protective order, we do note, as plaintiff suggests, that the terms of the "interim" protective order entered by Judge Duff are more restrictive than some of those originally agreed upon between the parties, particularly insofar as they apparently limit plaintiff's counsel from disclosing the materials to consultants and require notification to GMC prior to disclosure to plaintiff's experts who are potential witnesses. If any type of protective order is deemed appropriate, both sides must be heard as to its scope, and it would seem appropriate to consider incorporating those matters previously agreed upon.

We accordingly direct Judge Duff or his successor to vacate the order of March 12, 1982, and to proceed in accordance with this opinion.

*Writ denied; supervisory*
*order entered.*

JUSTICE SIMON, concurring:

I concur with the majority's wise disposition of the propriety and scope of the protective order in this case, and with the test it suggests Judge Duff use on the remand in assessing whether any change is to be made in that order. However, I believe the majority opinion should have included directions to Judge Duff to reinstate one part of Judge Bieschke's order, the portion requiring production of the reports and films requested by plaintiff in Chicago rather than at GMC's offices in Michigan. The place of production is a matter of convenience to the parties rather

than a safeguard that GMC requires for its protection; it is at most a part of the background against which any protective order that is entered must operate. The circumstances underlying Judge Bieschke's order regarding the place of production are not alleged to have changed, and no new facts bearing on the issue have come to light. Under the test set forth in the majority opinion, Judge Duff's order altering the place of production was an abuse of discretion and should be expunged without further consideration of the proper place for production.