2022 IL App (1st) 210903-U

No. 1-21-0903

Order filed June 24, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| EARNEST LEE AND MILDRED LEE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 10445 |
| | ) | |
| BERKSHIRE NURSING & REHAB CENTER, LLC, | ) | Honorable |
| d/b/a APERION CARE FOREST PARK, and APERION | ) | Toya Harvey, |
| CARE, INC., | ) | Judge, Presiding. |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Mildred Lee, as Administrator of the Estate of Earnest | ) | |
| Lee, Deceased, and Individually, Appellee v. Aperion | ) | |
| Care, Inc., Appellant). | ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Harris and Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  A successor judge has the power to revise or amend an interlocutory order of a
previous judge when justice so demands; therefore, we affirm the circuit court's
grant of plaintiff's motion for leave to depose the managers of Aperion where such
depositions are relevant and essential to determining the true relationship between

Berkshire and Aperion. We vacate the contempt finding and the $500 fine imposed by the circuit court.

¶ 2   This interlocutory appeal arises from a direct civil order of "friendly" contempt and a $500 fine entered by the circuit court of Cook County against defendant Aperion Care, Inc. (Aperion) for its failure to produce Yosef Meystel and David Berkowitz for deposition in compliance with the court's April 29, 2021, order. On appeal, Aperion contends that: (1) the circuit court erred in reversing the October 19, 2020, order that denied plaintiff leave to depose Meystel and Berkowitz in the absence of changed circumstances or facts, and (2) the $500 fine should be vacated. For the following reasons we affirm the discovery order of the circuit court and vacate the contempt finding and the $500 fine imposed by the circuit court.

¶ 3                                        BACKGROUND

¶ 4   Briefly stated, the underlying action alleged medical negligence and violations of the Nursing Home Care Act filed by plaintiff, Mildred Lee, as Administrator of the Estate of Earnest Lee, deceased, and individually against Berkshire Nursing & Rehab Center, LLC d/b/a Aperion Care Forest Park (Berkshire) and Aperion between August 5, 2014, and August 25, 2014.[1] Plaintiff alleged that during his time at Berkshire, Earnest developed discoloration of the toes on his left foot prior to his discharge home on August 25, 2014. The following day, a home healthcare nurse saw his foot and called an ambulance. Earnest was taken by ambulance to Loyola University Medical Center where he was diagnosed with a blood clot in his left leg, gangrene, and sepsis, and subsequently underwent a below-the-knee amputation. Approximately

---

[1] The original underlying action was a medical malpractice case with Earnest Lee and Mildred Lee as plaintiffs filed on July 29, 2016, under case number 2016 L 007561. However, the case was renumbered as case number 2018 L 10445 on September 26, 2018, following an unrelated appeal (.

two months later, Earnest had an above-the-knee amputation. He died on September 2, 2019, during the pendency of this case.

¶ 5      Plaintiff's fifth amended complaint was filed on October 10, 2018, and included claims against Berkshire and Aperion. Aperion responded with a motion to dismiss on the grounds that it never owned, operated, or managed Berkshire. On February 8, 2019, the circuit court, Judge John Ehrlich presiding, ordered Aperion to provide an affidavit regarding the ownership issues by February 22, 2019. Aperion subsequently withdrew its motion to dismiss on March 15, 2019, and was ordered to answer outstanding written discovery by March 27, 2019.

¶ 6      The parties subsequently engaged in written and oral discovery and related motions, including several motions by plaintiff to compel Berkshire and Aperion to produce certain employees for deposition. Additionally, the case was set for an expedited trial date of April 10, 2020. On February 19, 2020, plaintiff filed a motion to compel discovery against Berkshire and Aperion, including a request to compel Meystel's deposition. The record reflects that during a case management conference on March 4, 2020, Judge Ehrlich addressed outstanding discovery and depositions. The written order from that date indicates that, over plaintiff's objection, the court granted Aperion's oral motion to bar Meystel's discovery deposition. The record contains no report of proceedings or bystander's report from that date. The court also granted plaintiff leave to file a complaint substituting Mildred as administrator of the estate as the plaintiff, and adding wrongful death and survival claims. Plaintiff's sixth amended complaint was subsequently filed on March 16, 2020.

¶ 7      Berkshire and Aperion filed a combined motion to dismiss plaintiff's sixth amended complaint pursuant to sections 2-615 and 2-619 (735 ILCS 5/2-615, 2-619 (West 2018)) of the

Code of Civil Procedure (Code) on May 14, 2020. Relevant to this appeal, Aperion asserted that it was entitled to a dismissal with prejudice under section 2-619 because it never owned, operated, or managed Berkshire and was never involved in or affiliated with Earnest's care and treatment. Attached to the motion was the sworn affidavit of Aperion's general counsel, Fred Frankel, which averred that: (1) he was aware of the relationship between Aperion and Berkshire at all times relevant to plaintiff's sixth amendment complaint; (2) Aperion never owned, operated or managed Berkshire, nor had it identified itself as a specialist providing skilled and intermediate nursing consulting services in the field of nursing home care; and (3) Aperion was the manager of Berkshire's limited liability company (LLC), which was the entity that was the operator/licensee of the nursing home and Aperion was never involved in the day-to-day operations of Berkshire.

¶ 8        On June 30, 2020, plaintiff filed a motion to compel, seeking discovery compliance by Berkshire and Aperion. An amended motion to compel was filed on July 2, 2020, in which plaintiff sought outstanding discovery compliance and a complete copy of the operating agreement between Aperion and Berkshire. The motion alleged that Aperion managed and operated over 50 nursing homes, including Berkshire. The motion further alleged that in May 2020, Aperion and Berkshire provided an amended operating agreement dated July 7, 2014, which transferred management responsibilities for Berkshire from Meystel and Berkowitz to Aperion. The amendment to the operating agreement was signed by Meystel and Berkowitz on behalf of Berkshire and by Berkowitz on behalf of Aperion in his capacity as its president. Berkshire and Aperion also entered into a trademark license agreement on July 7, 2014, which granted Berkshire a license to use the Aperion Care trademark and detailed insurance requirements for Berkshire. Additionally, the motion requested reconsideration of the March 4,

2020, ruling that barred plaintiff from deposing Meystel, arguing that there was no legal basis for the court to grant Aperion's oral motion which was unsupported by case authority. Plaintiff maintained that such deposition was necessary because the amendment to the operating agreement established that Meystel, along with Berkowitz, was directly involved in the operation and management of Berkshire and had knowledge of the circumstances involving Aperion's management responsibilities for the facility. Plaintiff also requested a copy of the full June 6, 2007, operating agreement for Berkshire.

¶ 9       In a written order entered on July 9, 2020, by Judge Ehrlich, the circuit court ordered Berkshire and Aperion to, among other things, provide a complete copy of any and all operating agreements inclusive of amendments and exhibits dated June 6, 2007, August 7, 2013, July 7, 2014, and any other date between them, under any assumed names or doing-business names. The documents were due by July 23, 2020, and the failure to produce was subject to a $250 per day fine for each day the documents were not produced. The order did not specifically address deposing Meystel or Berkowitz.

¶ 10      On July 23, 2020, Berkshire and Aperion filed a motion to reconsider the July 9, 2020, ruling and allow them to file a response to plaintiffs outstanding motion to compel, which was denied on July 27, 2020. Pursuant to an agreed order, the time for completion of discovery was extended to December 11, 2020.

¶ 11      On October 1, 2020, plaintiff sought leave to depose Meystel and Berkowitz, based on their collective ownership of both Aperion and Berkshire. Plaintiff noted that defendants' section 2-619 motion was then still pending, in which they asserted that Aperion never owned, operated, or controlled Berkshire, but that the assertion was directly contradicted by the subsequently produced operating agreement. Berkshire's June 7, 2007, operating agreement

expressly provided that Meystel and Berkowitz were responsible for the management of the company. Additionally, plaintiff contended that the July 7, 2014, amendment to the operating agreement expressly appointed Aperion as Berkshire's new manager. Plaintiff maintained that deposing Meystel and Berkowitz was reasonably calculated to lead to the discovery of admissible evidence, especially concerning insurance matters as Berkshire was underinsured. Aperion's response filed on October 13, 2020, reiterated its position that the requested depositions were irrelevant to plaintiff's cause of action.

¶ 12      The circuit court, Judge Ehrlich, ruled on plaintiff's motion on October 19, 2020, in a written order. The order stated that plaintiff was barred from deposing Meystel because the initial order barring the deposition was entered on March 4, 2020, and plaintiff did not file a motion to reconsider that decision, so the decision stood. As for Berkowitz, plaintiff's motion to depose was denied because the court found he and Meystel to be in the same position; each had 47% ownership interest in Berkshire and that both were managing members of Berkshire in 2014.

¶ 13      Aperion and Berkshire sought a substitution of judge as of right which was granted on December 7, 2020, and the case was assigned to Circuit Court judge Toya Harvey on December 16, 2020. On March 16, 2021, plaintiff refiled her motion for leave to depose Meystel and Berkowitz, and requested to do so prior to responding to defendants' pending motion to dismiss. The motion raised no new points for requesting to depose Meystel and Berkowitz. The motion was set for hearing on April 29, 2021.

¶ 14      At the hearing, Judge Harvey noted that the case history indicated that an oral motion to bar Meystel's deposition was made and granted on March 4, 2020, but the written order did not provide a basis for barring the deposition: and that a motion to dismiss was not pending at the

time the order was entered. Judge Harvey further noted that the court's order of July 7, 2020, did not address plaintiff's request to depose Meystel or Berkowitz, and it was after that date that defendants tendered the Berkshire operating agreement and amendments, all signed by Meystel and Berkowitz. While acknowledging that the defense tendered Aperion's general counsel for deposition on August 20, 2020, Judge Harvey noted that he was not the individuals that plaintiff requested, namely those who signed the documents. Additionally, Judge Harvey noted that she was here to review the prior orders related to deposing Meystel and Berkowitz, but was reviewing the current motion for leave to depose that was pending in light of the current state of the case, where Aperion sought dismissal from the case. The court stated that the issue was not whether Aperion should be a party to the case but whether or not it had any ownership or licensing relationship with Berkshire and that it was important for the parties to establish what the true relationship was. With respect to the affidavit provided by Aperion's general counsel, Judge Harvey noted that it was not an affidavit by any of the parties listed as signatories on Berkshire's operating agreement. She concluded that plaintiff's request to depose Meystel and Berkowitz was appropriate and relevant. Plaintiff's motion was then granted.

¶ 15    Aperion filed a motion to reconsider on May 24, 2021, asserting that there was no change in circumstances since the previous denial of plaintiff's motion on October 19, 2020. A hearing was held on July 1, 2021, at which time Judge Harvey disagreed with Aperion's contention that nothing had changed since October 19, 2020. Judge Harvey reiterated that while the  motion to dismiss was filed prior to October 19, 2020, she could not clearly ascertain  from the order whether the previous judge considered the fact that there was a motion to dismiss pending. Judge Harvey found that there was an agreement between Berkshire and Aperion, signed by both Meystel and Berkowitz, and further that the general counsel was not the best or

most knowledgeable person regarding the relationship between the entities. Accordingly, she denied the motion to reconsider.

¶ 16    Aperion's counsel subsequently requested a friendly contempt so that the matter could be appealed. On July 15, 2021, an order of direct civil "friendly" contempt was entered against Aperion, along with a fine of $500, and included Rule 304(b)(5) language for purposes of appeal.

¶ 17    On August 3, 2021, this timely interlocutory appeal followed.

¶ 18                                    ANALYSIS

¶ 19    On appeal, Aperion contends that: (1) the circuit court erred in reversing the October 19, 2020, order that denied plaintiff leave to depose Meystel and Berkowitz in the absence of changed circumstances or facts, and (2) the $500 fine should be vacated. Aperion contends that the trial court should not have reversed the earlier discovery orders entered in 2020 without finding there was a change of circumstances or additional facts.

¶ 20    Before we reach the merits of Aperion's appeal, we examine this court's jurisdiction over this interlocutory appeal.

¶ 21    Ordinarily, discovery orders are not appealable interlocutory orders specified under Supreme Court Rules 306 or 307 (Ill. S. Ct. Rs. 306, 307 (eff. Oct. 1, 2020, Nov. 1, 2017)) because they are not final orders. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). However, it is well settled that a party may test a discovery order by refusing to comply, thereby forcing the trial court to find that party or witness in contempt and to assign an appropriate sanction. *Lewis v. Family Planning Management, Inc.*, 306 Ill. App. 3d 918, 922 (1999). Rule 304(b)(5) (eff. Mar. 8, 2016) provides that "[a]n order finding a person or entity in contempt of a court which imposes a monetary or other penalty" is appealable without a Rule 304(a) finding. *In re*

*Marriage of Gutman*, 232 Ill. 2d 145, 153 (2008). When an individual appeals contempt sanctions imposed for violating, or threatening to violate, a pretrial discovery order, the discovery order is subject to review because review of a contempt finding necessarily requires review of the order upon which it is based. *Norskog*, 197 Ill. 2d at 69. It is the order of discovery, not merely the grounds upon which it was based, that is subject to review. *Id.* As a general rule, courts of review may sustain orders on any grounds which are called for by the record, regardless of the grounds relied on when the order was entered. *Id.* at 69-70.

¶ 22 In the case at bar, the circuit court entered a "friendly" direct civil contempt order and imposed a fine of $500 against Aperion on July 15, 2021, pursuant to Rule 304(b)(5) to allow for an interlocutory appeal of the court's order. The order also included Rule 304(b)(5) language. Thus, we have jurisdiction to consider the merits of the appeal.

¶ 23 We first consider Aperion's claim that the circuit court erred in reversing the October 19, 2020, order that denied plaintiff leave to depose Meystel and Berkowitz in the absence of changed circumstances or facts.

¶ 24 Although a trial court's discovery order is ordinarily reviewed for a manifest abuse of discretion, the proper standard of review depends on the question that was answered in the trial court. *Motorola Solutions, Inc. v. Zurich Insurance Company*, 2017 IL App (1st) 161465, ¶ 17. If the facts are uncontroverted and the issue is the trial court's application of the law to the facts, a court of review may determine the correctness of the ruling independent of the trial court's judgment. *Id.* Here, the motion to reconsider was based on it being necessary to plaintiff's case to depose Meystel and Berkowitz. As such, our standard of review is manifest abuse of discretion. We now turn our attention specifically to the circuit court's reversal of the prior interlocutory rulings.

¶ 25 Our supreme court has determined that prior interlocutory rulings should be modified or vacated by a successor judge only after careful consideration. *Balciunas v. Duff*, 94 Ill. 2d 176, 187 (1983). In the context of discovery, "where abuse is said to be widespread and delay phenomenal," it is "particularly appropriate for a judge before whom a motion for reconsideration is pending to exercise considerable restraint in reversing or modifying the previous rulings," especially if there is evidence of judge shopping or it is apparent that a party is seeking, for delay or abusive purposes, a reconsideration of prior rulings. *Id*. at 187-88. Accordingly, the supreme court held that once the court has exercised its discretion, that ruling should not be reversed by another member of the court simply because there is a disagreement on the manner in which that discretion was exercised. *Id.* at 188. Instead, a successor judge, before whom the case has been assigned, should revise or modify previous discovery rulings only if there is a change of circumstances or additional facts which warrant such action. *Id*.

¶ 26 However, it must be stated that when an order is interlocutory, the circuit court has the power to amend it or revise it at any time prior to final judgment, and it does not matter that the judge who vacates or changes an order is not the same one who entered it in the first place. *Peoples Gas Light & Coke Co. v. Austin*, 147 Ill. App. 3d 26, 31 (1986). See also *Lake County Riverboat L.P. ex rel. FRGP, L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 950 (2000); *Thomas v. Johnson Controls, Inc.*, 344 Ill. App. 3d 1026, 1031 (2003). A trial judge is not bound by the order of another judge; he has a right to review the order if he believes it is erroneous and he is obligated to do so if changed circumstances make the prior order unjust. *Id.* at 32. And while vacating or amending a prior order should only be done after careful consideration, a demonstration of changed circumstances is necessary only when the efficient administration of justice would be frustrated or uncertainty in litigation promoted. *Id.*

¶ 27 Turning to the instant case, contrary to Aperion's assertions on appeal, the record reveals that the successor judge, Judge Harvey, fully and carefully considered the 2020 orders entered by the previous judge, Judge Ehrlich, and the bases for those orders, as well as Aperion's pending motion to dismiss and its effect on the case, prior to issuing a ruling that was contradictory to that of the previous judge.

¶ 28 As noted previously, the case was originally pending before Judge Ehrlich who entered the 2020 orders granting Aperion's oral motion to deny plaintiff's requests for deposition. However, the record does not contain a report of proceedings or certified bystander's report from the March 4, 2020, hearing where Aperion's oral motion to bar Meystel's deposition was made. Nor does the written order contain the context or reasoning for why the oral motion to bar Meystel's deposition was granted. It appears from the record that the October 19, 2020, order was entered by Judge Ehrlich on review of the written materials submitted by the parties; however, the order did not provide the basis for the bar of Meystel's deposition. With regard to Berkowitz, the order only stated that he was in the same position as Meystel, and listed their respective ownership percentages of Aperion, which amounted to 94% ownership. Further, as noted by Judge Harvey, there was no indication in the October 19, 2020, order that the previous judge considered the pendency of Aperion's pending motion to dismiss when it ruled that the depositions were barred. In granting plaintiff's 2021 motion for leave to depose, the circuit court based its decision on the fact that Meystel and Berkowitz signed the operating agreement and that Frankel's affidavit and deposition did not obviate the need for their depositions. The circuit court indicated several times that it was not a reviewing court and was not reviewing the prior orders from 2020, but was examining the current motion in light of the present status of the case.

¶ 29       We disagree with Aperion's assertion that a successor judge can never revise or modify a previous discovery ruling unless there was a change of circumstances or additional facts. As noted above, a demonstration of changed circumstances is necessary only when the efficient administration of justice would be frustrated or uncertainty in litigation promoted. *Peoples Gas*, 147 Ill. App. 3d at 32. The exact opposite is present in this case as it is still in the discovery phase after almost six years of litigation.

¶ 30       Here, plaintiff has sought to depose at least one manager of Aperion since early 2020 and instead of complying and promoting efficiency, Aperion responded with a motion to dismiss and its general counsel's affidavit, which it claimed satisfied the inquiry regarding the relationship between Berkshire and Aperion. Aperion then doubled down on its slow production of documents and refusal to comply with deposal of the managers of Aperion, which pursuant to the July 2014 amendment to the operating agreement, manages Berkshire. The affidavit provided by its general counsel fails to address at least three relevant matters for purposes of this litigation: 1) how long he represented Aperion as general counsel, 2) to what extent Aperion and Meystel or Berkowitz individually managed and made decisions concerning Berkshire, and 3) what did Aperion do as manager of Berkshire if it was not responsible for its operation or management. Moreover, Meystel and Berkowitz signed the amended operating agreements on behalf of Berkshire, which is where Earnest was a patient and received care: thereby making their depositions clearly relevant to the proceedings. The record also reflects that the trademark license agreement provided by Aperion for Berkshire raised additional questions for plaintiff concerning the underinsurance of Berkshire when such agreement covered insurance requirements to operate under the Aperion name. Additionally, as noted by Judge Ehrlich in the October 19, 2020, order, both Meystel and Berkowitz each own 47% of Aperion and are its

managers. This supports the conclusion that they would have intimate knowledge of Aperion's operations concerning Berkshire, which they also individually managed until just a month prior to Earnest being a patient there. Upon review of the affidavit, the operating agreement and all of the amendments, it appears that Meystel and Berkowitz are indeed the best people to provide information about the true relationship between the entities and not Aperion's general counsel, contrary to the orders entered by the prior judge in 2020.

¶ 31     As such, we find no abuse of discretion by the successor judge in granting plaintiff's motion to depose Meystel and Berkowitz. Our supreme court has held that courts of review may sustain contempt and discovery orders on any grounds called for by the record, regardless of the grounds relied on when the order was entered. *Doe v. Township High School District 211*, 2015 IL App (1st) 140857, ¶ 123 (citing *Norskog*, 197 Ill. 2d at 69-70).Those grounds, supported by this record, is that the prior orders barring their deposition were erroneous in light of the circumstances of the case over the course of almost six years of litigation and the fact that it still has not progressed beyond the discovery phase. Additionally, we believe that a successor judge has the power to revise or amend a prior interlocutory order entered in the case when justice so demands. It is clear that the 2020 orders were all interlocutory orders as the case is still in the discovery stage.

¶ 32     Given that there is a pending motion by Aperion to have itself dismissed from the case, we agree with the successor judge that the depositions of Meystel and Berkowitz are relevant and essential to determining the true relationship of the entities and further that the record does not establish any substantive reasoning of the previous judge in barring the depositions. We therefore affirm  the decision of the circuit court.

¶ 33        Regarding the entry of the "friendly" direct civil contempt order against Aperion and its attorneys, whether a contempt finding should be vacated is a question to be determined by the individual facts of the particular appeal. *Doe*, 2015 IL App (1st) 140857, ¶ 121. Civil contempt is coercive in nature (*In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990)) and is designed to compel future compliance with a court order (*In re Marriage of Sharp*, 369 Ill. App. 3d 271, 279 (2006)). A person held in civil contempt must have the ability to purge the contempt by complying with the court order. *Pryweller v. Pryweller*, 219 Ill. App. 3d 619, 633 (1991). However, when an attorney's noncompliance with a discovery order is based on a good faith effort to secure an interpretation of an issue to serve his or her client and the court, a civil contempt finding should not stand. *Doe*, 2015 IL App (1st) 140857, ¶ 124. In weighing the attorney's disregard of a circuit court's order against the serious consequences of contempt, we exercise our discretion to vacate the contempt finding and the $500 fine. *Id.*

¶ 34                                                CONCLUSION

¶ 35        For the foregoing reasons, we affirm the order of the circuit court of Cook County. In addition, we vacate the contempt finding and the $500 fine imposed by the circuit court.

¶ 36        Affirmed; civil contempt finding and the $500 fine vacated; and the case remanded for further proceedings consistent with this order.